IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WILLIAM M. HOOKER, JR., | |
| Appellant, | Civil Action No. 05:06-CV-00103 |
| v. | **MEMORANDUM OPINION** |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | By: Samuel G. Wilson<br>United States District Judge |
| Appellee. | |

This is an appeal by appellant-debtor William M. Hooker, Jr., from a final decision of the United States Bankruptcy Court for the Western District of Virginia finding that Hooker, who has been diagnosed as paranoid-schizophrenic and HIV positive, failed to meet the "undue hardship" requirement of 11 U.S.C. § 523(a)(8) to discharge his student loan obligations. The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court denied Hooker a discharge, finding that Hooker had failed to prove "good faith" in attempting to repay his student loans because he failed to consider making payments pursuant to an "income contingent repayment plan." For the reasons stated, this court will remand the case to the Bankruptcy Court for further proceedings.

I.

Between 1989 and 1997, Hooker obtained eleven student loans from CitiBank beginning in 1989, which he consolidated in July 2001. Hooker discovered he was HIV positive in 1999 and has also been diagnosed as paranoid-schizophrenic. Both of these diseases are permanent, require a lifetime of medication and medical care, and have limited his ability to perform certain types of

work and the number of hours he is capable of working.

For the past nine years, Hooker has been seasonally employed as a waiter, from April through November. In the months between December and March, he has worked either as a waiter at a different restaurant or drawn unemployment compensation, although due to his deteriorating health, he does not anticipate being able to work year-round in the future. He requires AIDS medication costing approximately $1,190.00 each month, which is currently paid for by the AIDS Drug Assistance Program, although he otherwise has no health insurance to cover treatments or medication. According to his bankruptcy schedules, Hooker has monthly expenses of approximately $1,161, and his average earnings for the last two months he worked, April and May of 2006, were $1,459. Hooker has made some payments on his student loans, and has sought forbearances and consolidations. Hooker testified in the Bankruptcy Court that he regularly paid his loans until 2001, when he claims he became financially unable to continue making payments. (Tr. at 16:1-9, 20:1-3, August 3, 2006). However, despite knowing about an income contingent repayment option for his loans, Hooker admits he did not further investigate or participate in the program, which would have required him to pay an estimated $160.12 each month.[1] Because he did not consider or pursue this repayment option, the Bankruptcy Court found that Hooker did not demonstrate good faith in his repayment efforts and, therefore, could not discharge his student loan debt.

---

[1] An attorney for Educational Credit Management Corporation sent a letter to Hooker, appraising him of various loan repayment options, including the income contingent repayment program, and the letter also referred Hooker to the "William D. Ford Direct Loan repayment program" website for additional information. (Tr. at 71:13-18, August 3, 2006). Under the income contingent repayment program, payments are based in large part on the debtor's household adjusted gross income.

## II.

Student loan debt is excepted from discharge unless excepting it would "impose an undue hardship on the debtor..." 11 U.S.C. § 523(a)(8). The Fourth Circuit has adopted the Second Circuit's three-prong test outlined in <u>Brunner v. N.Y. State Higher Educ. Servs. Corp.</u>, 831 F.2d 395, 396 (2d Cir. 1987), for determining whether a debtor has demonstrated an "undue hardship" to discharge the debtor's student loans. <u>In re Frushour</u>, 433 F.3d 393, 398 (4th Cir. 2005). To prove an undue hardship under that test a debtor must show: (1) he cannot maintain a minimal standard of living and repay the loans; (2) additional circumstances exist that illustrate he will not be able to repay the loans for a substantial part of the repayment period; and (3) he attempted to repay the loans in good faith. <u>In re Frushour</u>, 433 F.3d at 401. The Bankruptcy Court found it unnecessary to decide whether Hooker satisfied <u>Brunner</u>'s first two prongs because it concluded that he had failed to satisfy the third. The Bankruptcy Court, relying on <u>In re Frushour</u>, concluded that Hooker did not prove he attempted to repay his loans in good faith since Hooker failed to look into or participate in an income contingent repayment plan option that would have cost approximately $160 per month. The court finds that Hooker's failure to investigate the repayment plan is not dispositive and that given the circumstances of this case, additional information is necessary to determine whether Hooker's loan debt should be discharged.

The Fourth Circuit in <u>In re Frushour</u> found that Frushour, a healthy young woman who refused to take advantage of a loan repayment option that would have allowed her to keep her preferred employment and maintain her current level of expenditures, because she did not feel that the plan was suited for her and she wanted "a fresh start," did not demonstrate a good faith effort to repay her loans. <u>In re Frushour</u>, 433 F.3d at 403. The court found it unnecessary to reach the first prong of the <u>Brunner</u> test, because it concluded that Frushour failed to satisfy both the second and

-3-

third prongs. The court held that the second prong, "that additional circumstances exist indicating [the debtor's] state of affairs is likely to persist," is demanding, requiring that a "'certainty of hopelessness' exists that a debtor will not be able to repay the student loans." Id. at 401. (citations omitted). The court noted that only a debtor with rare circumstances would satisfy this prong, such as a an "'illness, disability,' a lack of useable job skills, or the existence of a large number of dependents." Id. (citations omitted). Frushour failed this prong because she provided no additional circumstances beyond the debt itself to show her hardship was undue. Id. In considering the third prong, the Fourth Circuit held that Brunner's "good faith" requirement focuses on the debtor's efforts to obtain employment, maximize his income, and minimize his expenses, and that Frushour did not show the requisite effort necessary to satisfy this prong. Id. at 402.

In contrast to Frushour, Hooker has only meager earnings, appears to have a very modest lifestyle, has a serious mental disorder and is fighting a terminal disease that requires him to receive assistance and medications in order to survive. An HIV-positive, paranoid schizophrenic does not have to juggle the burdens of his illnesses, the cost of his medical care, and his student loan debt to satisfy the good faith requirement of Brunner's "undue hardship" test. Against the backdrop of a disease that looms largely in his future and his meager earnings, Hooker's failure to investigate or enroll in the income contingent repayment plan should not be dispositive.

Although the known and undisputed facts here stand in marked contrast to those in In re Frushour, it remains unclear to the court as to how Hooker's payment records relate to the onset of Hooker's illness. The court is unable to determine if his lack of payments in recent years demonstrates a lack of good faith or merely reflects the progression or the impact of his illnesses. Determining whether or not Hooker has demonstrated a good faith effort to repay his loans is a fact-laden inquiry, and this court cannot say as a matter of law that Hooker demonstrated good faith

-4-

Case 5:06-cv-00103-SGW   Document 8   Filed 05/08/07   Page 4 of 5   Pageid#: 382

without more fact-finding by the Bankruptcy Court concerning Hooker's payment history and the onset and interplay of his illnesses. Hooker testified that he discovered he was HIV-positive after going to the doctor with flu-like symptoms in 1999, and began going to the University of Virginia Infectious Disease Clinic in November 1999. He was put on medication in March of 2000, and claims to have regularly paid his loans from 1996 until 2001, at which time he testified he no longer had the ability to make regular payments. If Hooker's claims are true, they shed light on whether Hooker has acted in good faith in the past which, in turn, sheds light on whether he is currently acting in good faith. However, his failure to consider or participate in the income contingent repayment plan should not be dispositive alone. Accordingly, the court remands this case to the bankruptcy court for further proceedings.

### III.

For the foregoing reasons, the court remands this case for further proceedings in order to determine whether Hooker has demonstrated an undue hardship that would justify the discharge of his student loan debt.

**ENTER:** May 8, 2007.

UNITED STATES DISTRICT JUDGE